This is a controversy submitted upon an agreed statement (172) of facts without action, in regard to $151,000 of Surry County road bonds which were awarded to the defendant at its bid of par and accrued interest, this bid being the highest bid submitted pursuant to the published notice of sale. The defendant afterwards declined to take the bonds, alleging they were unconstitutional. The court sustained the validity of the bonds, and defendant appealed.
On 3 March, 1919, the General Assembly ratified ch. 235, Public-Local Laws 1919, entitled "An act to create a highway commission for Surry County for the improvement of the public roads." This act created the Highway Commission of Surry County and among other provisions authorized, in sections 21, 22 and 23, the issuance of $500,000 of "Surry County good roads bonds" to be made payable at such times as the board of county commissioners may designate, not exceeding thirty years, and bearing interest not exceeding 5 per cent per annum, payable semi-annually, to carry out the purposes of the act. Section 22 provided that for the payment of interest thereon, and for maintenance of the said roads, the county commissioners should annually levy taxes "not to exceed 40 cents on the $100 and not exceeding $1.20 on the poll."
The defendants attack the constitutionality of this act upon two grounds:
1. That the act was passed in violation of sec. 29, Art. II, of the Constitution, which prohibits the passage of "any local, private or special act . . . authorizing the laying out, opening, altering, maintaining or discontinuing of highways." This objection has been fully discussed and similar acts to this held constitutional in Brown v. Comrs., 173 N.C. 598, which was approved and affirmed in Mills v. Comrs., 175 N.C. 215, and reaffirmed at this term in Martin v. Trust Co. and Davis v. Harris. It is unnecessary to repeat what has *Page 185 
been so fully discussed and so recently decided. We can add nothing thereto.
2. The defendant further contends that section 24 of the act before us is unconstitutional. That section provides that $349,000 of this issue of $500,000 of bonds authorized by this act may be used to retire certain township bonds of said county which have been issued for road purposes in exchange for said township bonds if this can be arranged, but that if the holders of said township bonds or any of them refuse to accept these county bonds in exchange, then the issue of county bonds under this act shall be reduced (173) to that extent.
We do not see that the defendant, who has purchased and is to receive the other $151,000 of this bond issue, is at all concerned in the validity of the $349,000 of bonds to be issued in exchange for the township bonds. But as the question is presented, it may be well to state that this provision is an almost exact copy of similar provisions in the act in regard to Person County which was held valid in Wagstaff v. HighwayCommission, 174 N.C. 377, and which we reaffirm.
The object of this provision is to equalize the burden by relieving the townships, which have already issued bonds for this purpose, by substituting county bonds to the same extent by exchange with the holders of said township bonds, and where this cannot be done, by abating the proposed issue of $500,000 to the extent that said township bonds cannot be retired by exchange with the holders thereof. The object of the statute is as far as possible to make this road system a county and not a township burden. The cases of Bladen v. Boring, 175 N.C. 105, and Johnston v. StateTreasurer, 174 N.C. 141, cited by the defendant, have no application to the provisions of this statute.
The defendant further attacks the validity of the bonds and their issue by the county commissioners because of the limitation in the act of the levy to 40 cents on $100 and $1.20 per poll to create a sinking fund for the ultimate payment of the bonds, for the payment of interest and for the maintenance of the roads. There is no evidence or finding of fact that it will be insufficient for that purpose, and it is to be presumed that those who drafted the act made an estimate whether the sum which would be raised by such levy would be sufficient, as it doubtless will be, in view of the steadily increasing wealth of Surry County and the policy of revaluation of property at its full value which has been adopted by the State. But if it should prove insufficient this in no wise affects the constitutionality of the bonds or their validity in any respect. The defendant purchased with full *Page 186 
notice of that provision in the act, and the bonds in any view will be a valid obligation of the county of Surry. The defendant, if there arose a possibility of this not raising a sufficient amount, could proceed bymandamus to compel the application of the proceeds of the levy to the payment, first, of interest and maintenance and a corresponding reduction in the sinking fund if necessary, leaving the principal of the bonds to be provided for at maturity if the sinking fund is not sufficient, since the indebtedness in any event is a valid obligation of the county.
The bonds being issued for a necessary expense, "sufficient" taxes can be levied under the general statute authorizing counties to construct roads and bridges. Ch. 103, Laws 1917, amended by ch. 185, Laws 1919. Martin v.Trust Co., at this term.
The objection that permission to levy taxes in excess of (174) the constitutional limitation can be granted under Art. V, sec. 6, only by "special approval" of the General Assembly, and that by the decision in R. R. v. Cherokee, 177 N.C. 86, it was held that such approval could not be given by a general act, was fully met by the decisions in Parvin v. Comrs., 177 N.C. 508, andMartin v. Trust Co., at this term, which held that "special approval" is not required to be given by a "special act" restricted to a single county, but may be by general statute giving an option to any county which shall see fit to avail itself of such permission. InParvin v. Comrs., R. R. v. Cherokee was distinguished.
The defendant further contends that section 24 required, by implication, that notice shall be issued to the holders of township bonds to give them an opportunity to exchange them for county bonds, and that it does not appear that this was done. This in no wise concerns this defendant, for these $151,000 of bonds are not a part of the $349,000 to be used for the exchange with the holders of township bonds.
Publication of the notice of sale of these bonds was made "once a week for five successive weeks, beginning more than thirty days before the sale of the bonds." This is sufficient advertisement "for thirty days" as required by section 23 of the act. We know of no precedent or reasoning that can sustain the objection on this ground. We presume that it was put in ex abundantia cautela. Besides, the express grant of power in the general act to sell bonds "at public or private sale as the board of commissioners may determine," in sec. 6, ch. 185, Laws, 1919, ratified 8 March, 1919, five days after this special Surry County act was passed, makes it clear that the thirty days advertisement was not absolutely necessary. Such restriction in the bond sale act (Laws 1917, ch. 147) is no longer mandatory. *Page 187 
There is no merit in the contention that the general act of 1917, ch. 147, requires that the bonds issued under it shall be "callable" or "optional" bonds. In subdivision f, of sec. 1 of that act, following the provisions for calling designated bonds before maturity, are the following words: "Provided, the bonds designated shall express such condition on their face." Such proviso means that only such bonds can be called as have that provision expressed on their face, and there is no requirement that it shall be so expressed on any bond. Besides, these bonds are issued under this special act for Surry County, which has no such requirement. While taxation may be levied for the payment of these and other bonds in any county under ch. 103, Laws 1917, amended by ch. 185, Laws 1919, when issued for roads and bridges, these bonds are not subject to any restrictions and provisions as to their issue and sale other than those provided in this act under which they are issued.
Affirmed.
Cited: Coble v. Comrs., 184 N.C. 351; Armstrong v. Comrs., 185 N.C. 409;S. v. Kelly, 186 N.C. 374; Day v. Comrs., 191 N.C. 782.
(175)