F. W. DAY ET AL. v. COMMISSIONERS OF YADKIN COUNTY AND COMMISSIONERS OF SURRY COUNTY.

(Filed 19 May, 1926.)

**1. Highways—County Commissioners—Discretionary Powers—Statutes.**

The powers given to county commissioners over public highways, Const., Art. VII, sec. 2, may be taken away from them and conferred by statute upon other political agencies of the State, and such agencies may be deprived of the discretionary powers conferred by C. S., 1297, etc.

**2. Same—Constitutional Law—Local and Special Laws.**

While authority given by statute to a county or other political agency of a state, to issue bonds or impose taxation for highways in aid to their maintenance or construction, is not direct, local or special legislation as is prohibited by the amendment to our Constitution, Art. II, sec. 29, it is otherwise where the statute directs the building of a bridge at a specified place across a stream between two counties, and as an incident permits the issuance of bonds or the levying of taxes for the purpose, pledging the faith and credit of the State.

APPEAL by defendants from *Lane, J.* Petition for writ of mandamus. Reversed.

At the session of 1925 the General Assembly passed an act for the building of a bridge across the Yadkin River at Rockford between Yadkin and Surry counties. The first, second, and third sections provide that the defendants, acting jointly, shall construct or cause to be constructed a serviceable and satisfactory bridge at the place designated; shall make contracts; shall refer their material differences to arbitration; and unless and until otherwise directed by the General Asssembly, shall charge and collect tolls for the privilege of using the bridge. In section 3 the defendants are authorized and directed to issue and sell the bonds of their respective counties in such amount as may be necessary, up to and not exceeding $15,000 for each county, the proceeds of which shall be used for building the bridge and its approaches. In section 4 it is provided that if the tolls are not sufficient to maintain the installments of principal and interest, "the full faith and credit of the two counties is pledged to the validity of said bonds, and the commissioners of said counties are hereby authorized to levy sufficient tax to carry out this provision." Section 5 provides that the total cost shall be covered by the bonds of the two counties as contemplated by C. S., 3767. Public-Local Laws 1925, ch. 580.

The plaintiffs brought suit to compel the defendants to issue the bonds and build the bridge. The defendants filed separate answers setting up the following defenses: 1. The act is inhibited by Art. II, sec. 29 of the Constitution. 2. It does not provide a sufficient amount of money.

3. It requires the counties to engage in the business of maintaining a toll bridge. 4. No time is named for levying the tax. The cause was heard at Chambers, and it was ordered that a writ of mandamus issue to the defendants commanding them to build the bridge as prayed in the petition. The defendants excepted and appealed.

*W. L. Reece, D. M. Reece, and H. H. Barker for plaintiffs.*
*W. F. Carter for Commissioners of Surry County.*
*Williams & Reavis for Commissioners of Yadkin County.*

ADAMS, J. The Constitution enjoins upon the commissioners of the several counties the duty to exercise a general supervision and control of penal and charitable institutions, schools, roads, and bridges, of the levying of taxes, and of the finances of the counties, as prescribed by law. Constitution, Art. VII, sec. 2. After the adoption of the Constitution the Legislature conferred upon the counties, not only the functions of a corporate body, but certain statutory powers which could be exercised only by the commissioners, or in pursuance of a resolution approved by them. Among such powers are those of building, repairing, and keeping up bridges whether entirely in one county or over a stream dividing one county from another. C. S., 1297, (18), (20), (22); 3750, 3751, 3767. True, the powers conferred and the duties imposed on the commissioners by these and other statutes have in some instances been transferred to the board of road commissioners, or to the board of highway commissioners or other "bridge governing board" (C. S., 3778); but as distinguishable from a ministerial duty, these powers when exercised by the county commissioners under the general law involve judg-. ment and discretion, which as a general rule the courts will not attempt to control. *Brodnax v. Groom,* 64 N. C., 244; *Glenn v. Comrs.,* 139 N. C., 413; *Davenport v. Board of Education,* 183 N. C., 570; *Person v. Watts,* 184 N. C., 499, 506; *Lee v. Waynesville, ibid.,* 565; *Parks v. Comrs.,* 186 N. C., 490.

The defendants say that the avowed purpose of the act is to take away their discretion, to deprive them of the right to exercise their judgment, and thus to destroy their jurisdiction over a matter of local self-government. In proof they cite the imperative language of the act: they "shall construct . . . a bridge"; they "shall make contracts"; they "shall arbitrate their disagreements"; they "shall charge and collect tolls"; and "the credit of the counties is pledged." In reply it may be said that a mandatory statute which shuts out the exercise of discretion is not for that reason in conflict with the Constitution. Counties are agencies of the State and in the exercise of governmental functions, unless directed or restrained by the organic law, are subject practically to the unlimited control of the Legislature. *S. v. Jennette,* 190 N. C., 96.

In *Tate v. Commissioners,* 122 N. C., 812, it is said that the legislative authority can direct them to do as a duty all such things as it can empower them to do; and in *Glenn v. Comrs., supra,* in reference to the building of a bridge: "If the Legislature had directed a bridge to be built and maintained in proper condition for public travel as a part of a public highway, and provided the money or directed that a special tax be levied for that purpose, we would not hesitate to direct the writ (of mandamus) to issue, commanding the board to discharge the imposed duty. The county, being an agency of the State, and the commissioners being, in respect to the opening and maintaining of highways, state officers, may be compelled by mandamus to discharge such duty when no discretion is vested in them." *McCormac v. Comrs.,* 90 N. C., 441; *Harriss v. Wright,* 121 N. C., 172; *Jones v. Comrs.,* 137 N. C., 579; *Withers v. Comrs.,* 163 N. C., 341. These decisions were rendered before the adoption of Art. II, sec. 29, and we are therefore face to face with the question whether the act of 1925, *supra,* is inconsistent with this provision of the Constitution.

This amendment went into effect 10 January, 1917. *Reade v. Durham,* 173 N. C., 668; *Mills v. Comrs.,* 175 N. C., 215. It provides that the General Assembly shall not pass any local, private, or special act relating to ferries or bridges; if therefore, the act in question is local, private, or special within the contemplation of this section it cannot be upheld. Our solution of the question may be worked out by reference to former decisions. In *Brown v. Comrs.,* 173 N. C., 598, the plaintiffs sought to enjoin the defendants from issuing bonds and levying a tax "for road purposes in North Cove Township in McDowell County" on the ground that the act under which the defendants were proceeding was within the constitutional restriction; but the Court held that this restriction applies to direct legislation and not to the incidental operation of statutes, constitutional in themselves, upon subjects other than those with which they directly deal, and that as the direct legislation there was the bond issue the fact that the proceeds should be used for road purposes did not bring the act within the constitutional inhibition. Likewise in *Mills v. Comrs.,* 175 N. C., 216, it was shown that the commissioners of Iredell County had been authorized by a public-local act to issue bonds in the sum of $40,000 "for the purpose of building bridges over the Catawba River jointly with the county of Catawba," and the question was whether this act was in conflict with the constitutional amendment. It was held that there is nothing in the amendment which prohibits the Legislature from authorizing county commissioners to raise money by the issuance of bonds or by current taxation to enable them to carry out the measures necessary for the orderly government of their counties, and in consequence injunctive relief was denied. See, also, *Comrs. of Surry v. Trust Co.,* 178 N. C., 170; *Davis v. Lenoir, ibid.,* 668;

*Comrs. v. Bank,* 181 N. C., 347; *Emery v. Comrs, ibid.,* 420; *Hill v. Comrs.,* 190 N. C., 123. The act construed in *Parvin v. Comrs.,* 177 N. C., 508, was applicable to any county in the State and the proposed tax was intended for all the roads in a county (Public Laws 1917, ch. 284); and in *Honeycutt v. Comrs.,* 182 N. C., 319, it was made to appear that the road commissioners had the control and management of all their public roads and bridges.  There are other decisions in which bonds and the levy of a tax were sustained under acts construed to be permissive— their primary object being the raising of revenue or other such purpose and not the direct and explicit legislation exhibited in the present appeal.  Thus in *Martin County v. Trust Co.,* 178 N. C., 26, 34, it is said that the object of the amendment was not to prohibit the Legislature from granting such permission in cases where under our Constitution legislative permission is necessary; and in *Comrs. v. Pruden, ibid.,* 394, there is noted a distinction between the permissive power to issue bonds and the direct legislative authority to lay out, open, alter, or discontinue a particular road or highway.

None of these cases is finally decisive of the present appeal.  As we have seen, the amendment prohibits the passage of any local, private, or special act relating to ferries or bridges.  If we pass by the sale of the bonds and the levy of the tax, we are confronted with the question whether the legislative mandate in the first section of the act under consideration is local, private, or special.  The language is: "The board of county commissioners of Yadkin County and the board of county commissioners of Surry County shall construct or cause to be constructed a serviceable and satisfactory bridge across the Yadkin River between Yadkin County and Surry County at Rockford at a cost not to exceed twenty-five thousand dollars."  In *Mills v. Comrs., supra,* it is said that the word "local" has received no fixed or generally recognized meaning and must be defined by reference to the context; that the General Assembly had previously been urged many times to authorize a particular highway or to establish a bridge or ferry at a specified place by direct legislation; and that it was in reference to local, private, and special measures of this character that the amendment was adopted.  *Mr. Justice Holmes* observed, "The phrase 'local law' means, primarily, at least, a law that in fact, if not in form, is directed only to a specific spot."  *Gray v. Taylor,* 227 U. S., 51, 57 Law Ed., 413.  Local Laws are special as to place, and special laws are those made for individual cases. Lewis Sutherland on Statutory Construction (2 ed.), sec. 199 *et seq.; In re Harris,* 183 N. C., 633; *Armstrong v. Comrs.,* 185 N. C., 405. The first section of the act before us commands the commissioners of Surry and Yadkin counties to construct one bridge across the Yadkin River at a place which is pointed out and particularly defined; it is

direct legislation addressed to the accomplishment of a single designated purpose at a "specific spot"; it is therefore a local and special act, and as such is expressly prohibited by Art. II, sec. 29, of the Constitution. In further elucidation of this provision the following additional cases may be consulted: *Trustees v. Trust Co.,* 181 N. C., 306; *Sechrist v. Comrs., ibid.,* 511; *Robinson v. Comrs.,* 182 N. C., 590; *Galloway v. Board of Education,* 184 N. C., 245. The judgment is

Reversed.