Pearson, C. J.
 

 1. Has the General Assembly power to extend the limits of an incorporated town, without the consent, and against the wish of the citizens who live on, or own the land comprising the part to be annexed ?
 

 “All legislative power is vested in the General Assembly.” The Constitution of the United States, the Declaration of rights, and the Constitution of the State, impose the only restrictions to which this otherwise unlimited power is subject; frequency of elections being relied on to prevent its abuse, or mitig.’.te the effect of abuse, by the repeal of an unwise enactment.
 

 Counties and towns are instruments used for the good government and management of the whole State. To establish a county, or incorporate a town, is a legislative act, consequently, the General Assembly may exercise this power, whenever, and in such manner, as in in its opinion, the public good will be thereby promoted; unless the time, manner, or other circumstance of the act violates some provision of the Constitution.
 

 Counties and towns are usually made upon the petition of
 
 *373
 
 the citizens, especially interested, or a majority of them; but there is no ground to support the position, that the consent of this particular portion of the community, is a circumstance necessary to give validity to the exercise of the power of the General Assembly. Ours would be a strange sort of government, if the Legislature could not make a new county without the consent of the people there residing being first had and obtained, or if, when in the opinion of the Legislature, the population of a particular locality has become so dense that it cannot be well-governed by the ordinary ■ county regulations, and requires the special “rules and by-laws” of an incorporated town, to secure its good order and management, such locality cannot be incorporated into a town, or annexed to one already incorporated, without the consent of the inhabitants; and by a logical deduction, without the consent of every single individual. For, there being no social connection, each person must answer for himself, and is not bound by the acts of the others; so that the objection of
 
 one man,
 
 takes from the Legislature the power of doing what is necessary to promote the general welfare, unless he is specially excepted, and thus allowed to enjoy the benefits, without being subjected to the burthens of the incorporation.
 

 The position assumes that such legislative acts involve a
 
 eontraet
 
 between the General Assembly on the one part, and the citizen, or citizens of the locality on the other part. Herein lies the fallacy. There is no contract in respect to it. This is settled by
 
 Mills
 
 v.
 
 Williams,
 
 11 Ired. 558, where it is decided that the General Assembly has power to abolish a county, although a majority of the inhabitants are opposed to the passage of the repealing act. The subject is there fully discussed. An extract will serve our turn :
 

 “The purpose, in making all corporations, is the accomplishment of some
 
 gniblie
 
 goodSome corporations are created by the
 
 mere will
 
 of the Legislature, there being no other party interested or concerned. To this body, a portion of the power of the Legislature is delegated, to be exereised for the
 
 *374
 
 public good, and subject at all times to be modified, changed or annulled.
 

 “ Other corporations are the result of contract. The Legislature is not the only party interested; for, although it has a public purpose to accomplish, it chooses to do it by the instrumentality of a
 
 second party.
 
 These two parties make a
 
 contract.
 
 The Legislature, for and in consideration of certain labor and outlay of money, confers on the party of the second part, the privilege of being a corporation, with certain powers and capacities. The expectation of benefit to the public, is the moving consideration on one side; that of expected remuneration for the outlay, is the consideration on the other. It is
 
 a
 
 contract, and therefore, cannot be modified, changed or annulled, without the consent of both parties. So, corporations are either such as are independent of all contract, or such as are the fruit and direct result of a contract.
 

 “ The division of the State into counties, is an instance of the former. There is no contract — no
 
 second party,
 
 but the sovereign, for the better government and management of the whole, chooses to make the division, in the same way that a farmer divides his plantation off into fields, and makes cross fences, when he chooses. The sovereign has the same right to change the limits of counties and make them smaller or larger, by putting two into one, or one into two, as the farmer has, to change his fields; because it is an affair of his own, and there is no second party having a direct interest.” So, file incorporation of towns is an instance of the former. There is no contract — no
 
 second party,
 
 and the General Assembly has power to incorporate a town, or to extend, or contract the limits of one already incorporated, whenever in its opinion, public policy requires it to be done. It is a legislative act, in which no
 
 second party
 
 has a
 
 direct
 
 interest.
 

 2. Is the act void because of the provision, that it shall be of no effect unless accepted by the Mayor and Commissioners within one month after the ratification thereof? It is insisted by the plaintiffs that by the true meaning and spirit of the Constitution, the Legislature is required to pass all statutes
 
 *375
 
 upon its
 
 own
 
 responsibility, and its own judgment as to the expediency; that it lias no power to delegate its authority, or make a statute depend upon the opinion or wishes, of any man, or set of men, and that, in this instance, the interest of the persons without whoso acceptance the act is not to take effect, is opposed to that of the plaintiffs; so that they are put at the mercy of persons interested against them, and are aggrieved in their rights and estates by a statute, in respect to the expediency of which, and its necessity for the public good, there has been no absolute and unconditional expression of opinion by the law-making power, as is required by the Constitution. This position receives some countenance from a doctrine of the
 

 late Chief Justice Nash, in
 
 Hill
 
 v. Bonner, Bush. 257. That was a proceeding under the act to divide the county of Surry, which was made to depend upon a vote of the people. At a subsequent session, an act was passed confirming the first act, so the point was not presented; but the learned Judge intimates an opinion, that the original act was unconstitutional, and protests against that mode of legislation, “because it alters the fundamental principles of the government, by converting it from a
 
 representative
 
 republican government, into a pure democracy.” And it is supported b}r
 
 Basto
 
 v.
 
 Him
 
 rod, 4 Selden, 483. The action involved the constitutionality of an act of the Legislature of New York, (1849,) “to establish free schools throughout the State,” which wms made to depend on a vote of the people of the State. At a subsequent session, (1851,) it was re-enacted in the usual mode, which greatly diminished the practical importance of the question; it was, however, elaborately discussed, and the Court decided that the first act was unconstitutional. The argument upon that side of the question is strongly stated in the opinions delivered by two members of the Court. Buggles, O. J. saj’s: “It is not denied that a valid statute may be passed, to take effect upon the happening of some future event, certain or uncertain. The event, or change of circumstances, on which a law may be made to take effect, must be such, as, in the judgment of the Legislature, affects the question of the expe
 
 *376
 
 dieney of the law — -an event on which the expedienc}’' of the law, in the judgment of the law-makers depends. On this question of expediency, the Legislature must exercise its own judgment definitively and finally. When a law is made to take effect upon the happening of such an event, the Legislature, in effect declares the law inexpedient, if the event should not happen; but expedient if it should happen. They appeal to no other man, or men, to judge for them in relation to its present or future expediency. Rut in the present ease, no such event or change of circumstances, affecting the expediency of the law was expected to happen. The wisdom or expediency of the free school act, abstractly considered, did not depend on the vote of the people. The Legislature has no power to make a statute dependent on such a contingency, because it would be confiding to others that legislative discretion which they are bound to exercise themselves, and which they cannot delegate. They are no more authorised to refer such a question to the whole people, than to an individual. The people are-sovereign, but this sovereignty must be exercised in the mode which they have pointed out in the Constitution.”— Willard, J. ¡&ys: “If this mode of legislation is permitted, and becomes general, it will soon bring to a close the whole system of representative government, which has been so justly our ¡wide. The Legislature will become an irresponsible cabal, too timid to assume the responsibility of law-makers, and >vith just wisdom enough to devise subtle schemes of imposture to mislead tiio .people.”
 

 This decision, and the reasoning offered in support of it, fail to satisfy us that the Legislature has
 
 not the power
 
 to pass a law dependent upon a vote of the people, or the acceptance of a corporation. It is certain the Legislature has power to pass a law to ascertain these facts, and may, afterwards, make a law in conformity thereto; so, in its practical result, it makes no difference which act precedes the other. In the instance of the division of the county of Surry, and also, that of the free schools in New York, subsequent acts were passed confirming the first, and in regard to the latter, no question as to thepow
 
 *377
 
 er of the Legislature'could be raised. It is not denied
 
 that
 
 a valid statute may be passed to take effect upon the happening of an uncertain future event, upon which the Legislature, in effect, declares the expedienc3r of the law depends, and when it is provided that a law shall not take effect, unless a majority of the people vote for it, or it is accepted by a corporation, the provision is, in effect, a declaration that in the opinion of the Legislature, tire law is not expedient, unless it be so voted for, or accepted. It seems to us, the Court in New York, fell into error b3r not discriminating between a
 
 want
 
 of power and an
 
 abuse
 
 of power. All legislative power is vested in the General Assembty, restricted only bjr the Constitution. There is no prohibition in the Constitution against this mode of legislation, consequently, although it may be an abuse of power, greatly to be deprecated, as tending to subvert the principles of our representative form of government, still the power has been granted, and it is not the province of one branch of the government to correct the supposed abuses of another. The Judiciary can only interfere when the Legislature acts without power, i. e. in violation of the Constitution. In respect to the delegation of its power, supposed to be involved in an act of the General Assembly, making a law depend upon a vote of the people, or the acceptance of a corporation, or the action of the justices of the peace, or any other set of men,
 
 Thompson
 
 v Floyd, 2 Jones’, 313, is a direct authority in support of our conclusion. It is there decided that a statute giving the justices of a county power to abolish jury trials in the county courts, if at any time thereafter, a majority of the justices may deem it expedient, is not a violation of the Constitution. The subject is there fully discussed, and such delegation of power is shewn to have been of frequent occurrence, ever since the organization of the government.
 

 It will be declared to be the opinion of the Court, that the plaintiff’s have no equity, and the bill will be dismissed with costs.
 

 Per Curiam, Decree accordingly.